**UNITED STATES COURT OF APPEALS**
FOR THE SIXTH CIRCUIT

|  |  |  |
|---|---|---|
| Deborah S. Hunt<br>Clerk | 100 EAST FIFTH STREET, ROOM 540<br>POTTER STEWART U.S. COURTHOUSE<br>CINCINNATI, OHIO 45202-3988 | Tel. (513) 564-7000<br>www.ca6.uscourts.gov |

Filed: August 31, 2022

Ms. Carolyn A. Almassian
Office of the U.S. Attorney
Department of Justice
P.O. Box 208
Grand Rapids, MI 49501

Mr. William Frank Piper II
Law Office
1611 W. Centre Avenue, Suite 209
Portage, MI 49024

          Re:  Case No. 21-2811, *Okakpu-Mbah v. Postmaster General of United States*
               Originating Case No. : 1:19-cv-00975

Dear Counsel,

   The Court issued the enclosed opinion today in this case.

   Enclosed are the court's unpublished opinion and judgment, entered in conformity with Rule 36, Federal Rules of Appellate Procedure.

                                       Sincerely yours,

                                       s/Laurie A Weitendorf
                                       Opinions Deputy

cc: Mr. Thomas Dorwin

Enclosures

Mandate to issue

NOT RECOMMENDED FOR PUBLICATION
File Name: 22a0362n.06

Case No. 21-2811

| | |
|---|---|
| **UNITED STATES COURT OF APPEALS FOR THE SIXTH CIRCUIT** | **FILED** Aug 31, 2022 DEBORAH S. HUNT, Clerk |

|   |   |
|---|---|
| VICTORIA N. OKAKPU-MBAH, an individual,  Plaintiff-Appellant,  v.  POSTMASTER GENERAL OF THE UNITED STATES,  Defendant-Appellee. | ) ) ) ) ) ) ) ) ) ) ) ) ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF MICHIGAN  OPINION |

Before: GIBBONS, WHITE, and NALBANDIAN, Circuit Judges.

NALBANDIAN, Circuit Judge. The United States Postal Service hired Victoria Okakpu-Mbah to be a mail clerk. As a new hire, Okakpu-Mbah had to complete a 90-day probationary period, during which it became clear that she was not working at the appropriate speed. In turn, the Postal Service fired her. But Okakpu-Mbah believed that the Postal Service had treated her unfairly—especially considering the workplace incidents with her co-workers that took place during her probationary period. And so she sued, alleging that the Postal Service discriminated against her based on race, national origin, age, and that her firing was retaliatory. The district court granted summary judgment to the Postal Service, finding that Okakpu-Mbah did not show that the Postal Service's reason for firing her was pretextual. We **AFFIRM**.

No. 21-2811, *Okakpu-Mbah v. Postmaster Gen. of United States*

I.

Victoria Okakpu-Mbah is a Nigerian-born American. In 2016, she saw that the Postal Service was hiring a mail clerk at its Oshtemo Process and Distribution Facility (also known as the "Kalamazoo Hub Station" or "the Hub").[1]

Okakpu-Mbah began working as a mail sorter in October 2016 at the age of 58. Her duties involved processing packages, organizing them into carts by their zip code, and taking them to a designated area for pick up. At times, Okakpu-Mbah was expected to work as an expeditor. In that role, she had to go to the dock to receive incoming mail trucks, scan and monitor their trips on a computer, and ensure that the trucks were loaded properly. Because of the large volume of mail that had to be processed, speed was vital. Clerks had to "think quickly on [their] feet" and "be aware of [their] surroundings" in order to "stay safe and do the work that's required." Sometimes, mail clerks at Kalamazoo would start their day at the Westwood Post Office and work a few hours before going to the Kalamazoo Hub.

Okakpu-Mbah had some trouble with her co-workers. She worked mainly with three younger white females, Taylor Perkins, Krista Winters, and Joslyn Steck, who were all mail clerks. Okakpu-Mbah testified that shortly after she started, one of her co-workers asked about her age. And when she answered, the co-worker laughed and another said, "you're as old as my mother." (R. 42-1, Okakpu-Mbah Dep., PageID 167.) But Okakpu-Mbah thought it was a "joke" and never told Michelle Fish, her supervisor, about it. (*Id.*)

On December 23, 2016, Okakpu-Mbah was working on the dock as an expeditor. One of her co-workers, Jessi DeGryse, pushed one of the mail carts towards her, but the cart never hit her. Okakpu-Mbah complained to Perkins, but Perkins told her that is how DeGryse is. When DeGryse

---

[1] The full title of the position is PSE Clerk, Sales and Services Distribution Associate.

No. 21-2811, *Okakpu-Mbah v. Postmaster Gen. of United States*

found out, she came up to Okakpu-Mbah and screamed "what did you say to Taylor, . . . you F'ing old African piece of shit?" and told her to go back to her own country. (*Id.* at 169.) DeGryse was spitting on her while telling her all of this. (*Id.*) Okakpu-Mbah then complained to Fish about the event. (*Id.*) Fish told her to write a statement, which Okakpu-Mbah did. (*Id.* at 172.) In her statement, Okakpu-Mbah did not recount the specific language used by DeGryse; instead, she wrote that DeGryse was "cussing, swearing and . . . us[ing] all kinds of profane words that I cannot even put down here."[2] (R. 42-9, Witness Statements, PageID 242.) And Fish warned DeGryse, in the presence of her union representative, that her behavior was unacceptable.

As a new mail clerk, Okakpu-Mbah had to complete a 90-day probationary period. The Postal Service uses this period as the "final step in determining an employee's suitability, since only an actual trial on the job can be conclusive." U.S. Postal Serv., *Handbook EL-312 Employment and Placement* ("Handbook"), § 584.1.[3] During this time, employees are assessed on their work quantity, work quality, work relations, work methods, dependability, and personal conduct. Supervisors are also required to give probationary employees three reviews before their probationary period is over: one at 30 days, another at 60, and a final one at 80. And noncareer employees are "separated as soon as it becomes evident that they are unable to meet the requirements of their positions." Handbook § 584.35.

Fish gave Okakpu-Mbah her 30-day review on November 24, 2016 and rated her as satisfactory in all work categories except for work quantity, which she rated as unacceptable. Fish testified that she gave Okakpu-Mbah that rating because she "was not working at an acceptable

---

[2] Fish testified that she became aware of DeGryse's racist and ageist comments only after Okakpu-Mbah had been terminated. (R. 42-2, Fish Dep., PageID 196.)

[3] Available at: https://about.usps.com/handbooks/el312/el312c5_039.htm

3

No. 21-2811, *Okakpu-Mbah v. Postmaster Gen. of United States*

speed" and "did not keep up with her co-workers." (R. 42-2, Fish's Dep., PageID 197.) She added that "there was no sense of urgency in the work that she had done" and that she got in the way of her co-workers. (*Id.*) Fish explained all this to Okakpu-Mbah, and according to Okakpu-Mbah, told her that because she is new her speed would pick up over time.[4]

But Okakpu-Mbah's speed did not improve. Towards the end of her probationary period, Fish reached out to Okakpu-Mbah's other supervisors asking for their feedback on Okakpu-Mbah's performance. Brandi Whitten, a black supervisor at the Westwood Post Office, told Fish that Okakpu-Mbah "works veeeery slow and I don't think she grasps the concept." (R. 42-4, Whitten Email, PageID 203.) Whitten also testified that Okakpu-Mbah was "slower than most of the people that she was working with" and that she sometimes had to "redirect her to a different task" as a result. (R. 42-5, Whitten's Dep., PageID 210.) And Postmaster Travis Graham told Fish that Okakpu-Mbah "has no sense of urgency" and recommended that she not be kept after her probationary period. (R. 42-4, Graham Email, PageID 205.)

In January 2017, Fish fired Okakpu-Mbah because she was not working at the appropriate speed. Following her termination, Okakpu-Mbah sued. She alleged race and age-based harassment,[5] race and national-origin discrimination, age discrimination, and retaliation. Following discovery, the Postal Service moved for summary judgment, which the district court

---

[4] The parties dispute whether Fish gave Okakpu-Mbah her other performance reviews before firing her. Okakpu-Mbah maintains that Fish only gave her a 30-day performance review. And as evidence of this, she stresses that she did not sign the evaluation sheet for the 60-day or 80-day review. Fish, however, testified that she gave her all three performance reviews. Fish did not recall specifically the 60-day review but said that the 80-day review was the meeting in which she terminated Okakpu-Mbah. Fish explained that she forgot to have her sign and that she would not enter information on the evaluation form without first giving a review.

[5] Because Okakpu-Mbah did not pursue these claims on appeal, we do not consider them.

4

No. 21-2811, *Okakpu-Mbah v. Postmaster Gen. of United States*

granted. The district court held that Okakpu-Mbah failed to show that the Postal Service's reason for firing her—her lack of speed—was pretextual. Okakpu-Mbah appealed.

## II.

"We 'review a district court's grant of summary judgment de novo, viewing all the evidence in the light most favorable to the nonmoving party and drawing all justifiable inferences in [her] favor.'" *Delek US Holdings, Inc. v. United States*, 32 F.4th 495, 497 (6th Cir. 2022) (quoting *Fisher v. Nissan N. Am., Inc.*, 951 F.3d 409, 416 (6th Cir. 2020)).

## III.

On appeal, Okakpu-Mbah argues that the Postal Service's termination of her employment was discriminatory. She claims Title VII race and national origin discrimination, *see* 42 U.S.C. § 2000e-2(a)(1), age discrimination under the Age Discrimination in Employment Act of 1967 ("ADEA"), *see* 29 U.S.C. § 621, and retaliation, *see* 42 U.S.C. § 2000e-3(a). We agree with the district court and reject all three claims.

Because Okakpu-Mbah offers no direct evidence of discrimination or retaliation, her claims follow the familiar employment discrimination burden-shifting framework.[6] *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–03 (1973). First, she must make a prima facie case that her employer's adverse action was discriminatory or retaliatory. *Smith v. City of Toledo*, 13 F.4th 508, 515 (6th Cir. 2021). If successful, the burden shifts to the employer to provide a legitimate, nondiscriminatory reason for the adverse action. *Id.* At the last step, the burden shifts back on Okakpu-Mbah to show that the reason was pretextual. *Id.* Like the district court, we need only consider the pretext inquiry. Even if Okakpu-Mbah can establish a prima

---

[6] The burden-shifting framework is the same for Okakpu-Mbah's Title VII, ADEA, and retaliation claims, so we consider them together. *See Mitchell v. Toledo Hosp.*, 964 F.2d 577, 582 (6th Cir. 1992) (ADEA); *Kenney v. Aspen Techs., Inc.*, 965 F.3d 443, 448 (6th Cir. 2020) (retaliation).

5

No. 21-2811, *Okakpu-Mbah v. Postmaster Gen. of United States*

facie case, she cannot show that the Postal Service's legitimate reason for firing her—her insufficient work speed—was pretextual.

An employee can establish pretext in three ways. She can show that the proffered reason (1) "had no basis in fact," (2) "did not actually motivate the employer's action," or (3) was "insufficient to motivate the employer's action."[7] *O'Donnell v. City of Cleveland*, 838 F.3d 718, 728–29 (6th Cir. 2016) (quoting *Chen v. Dow Chem. Co.*, 580 F.3d 394, 400 (6th Cir. 2009)). The plaintiff "must produce sufficient evidence from which a jury could reasonably reject [the defendant's] explanation of why it fired her." *Chen*, 580 F.3d at 400. The Postal Service's employment handbook forecloses the third way of showing pretext because it says that employees "should be separated as soon as it becomes evident that they are unable to meet the requirements of their positions." Handbook § 584.35. Working inefficiently is sufficient to motivate the firing. This leaves the other two ways of showing pretext.

### A.

The Postal Service's reason for firing Okakpu-Mbah had a basis in fact. Okakpu-Mbah received an unacceptable review for her work-quantity performance, Fish told her that her speed was a concern, and other supervisors questioned her performance, saying she "works veeeery slow and I don't think she grasps the concept." (R. 42-4, Whitten Email, PageID 203.) Moreover, we have held that there is no "pretext when an employer's nondiscriminatory reason for terminating

---

[7] Okakpu-Mbah argues that she can establish pretext by showing that no other employee was ever fired for the same reason as she was. In *Smith v. Chrysler Corp.*, we explained that an employee "can show pretext by offering evidence that the employer's proffered reason . . . was never used in the past to discharge an employee." 155 F.3d 799, 805–06 (6th Cir. 1998). This has been used interchangeably with a more "common exposition of the third method of proving pretext," which is that the proffered reason was insufficient to motivate discharge. *Layman v. Alloway Stamping & Mach. Co.*, 98 F. App'x 369, 376–77 (6th Cir. 2004). But regardless, Okakpu-Mbah must show that the employees who were never fired for the same reason engaged in the same conduct. As explained below, she fails to make this showing.

6

No. 21-2811, *Okakpu-Mbah v. Postmaster Gen. of United States*

an employee is later proven false, so long as the employer can show that it honestly believed the reason was true when making the termination decision." *Boshaw v. Midland Brewing Co.*, 32 F.4th 598, 606 (6th Cir. 2022). Indeed, this is true even if the employer's "conclusion is later shown to be mistaken, foolish, trivial, or baseless." *Chen*, 580 F.3d at 401 (internal quotation omitted). And here, Fish's belief about Okakpu-Mbah's performance was reasonable. Not only was the belief based on Fish's own observation, but also on the observations of other supervisors who all agreed she was working slowly.

Okakpu-Mbah presents no evidence to the contrary. Instead, she asserts that she was not slow, that she worked through her breaks, and that the Postal Service has no objective measures to determine an employee's speed. But an employee's "subjective view of her" job performance is not enough to establish pretext. *Hendrick v. W. Rsrv. Care Sys.*, 355 F.3d 444, 462 (6th Cir. 2004). "[C]onclusory allegations and subjective beliefs" are "wholly insufficient evidence to establish a claim of discrimination as a matter of law." *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 584–85 (6th Cir. 1992).

And Okakpu-Mbah's claim that she worked through breaks fares no better. After all, how long she worked is not evidence of how efficiently she worked. In any event, Okakpu-Mbah's argument establishes, at most, that Fish might have been wrong about her performance review. But, as explained, because Fish's belief was reasonable, Okakpu-Mbah cannot show pretext by showing that it was wrong.

Finally, Okakpu-Mbah's claim that Fish's evaluation was based on subjective opinion with no objective metric cannot clear the pretext hurdle either. We have held that an employer's use of subjective reasons in terminating an employee, without more, "does not raise an inference" of discrimination. *Schoonmaker v. Spartan Graphics Leasing, LLC*, 595 F.3d 261, 269 (6th Cir.

7

No. 21-2811, *Okakpu-Mbah v. Postmaster Gen. of United States*

2010); *see also Tillotson v. Manitowoc Co.*, 727 F. App'x 164, 169 (6th Cir. 2018) (holding that an employee "cannot establish pretext simply because some of the component metrics in the company's evaluative rubric are subjective"). And Okakpu-Mbah "has offered no evidence from which a reasonable juror could infer that the [employer] manipulated, abused, or misapplied that criteria to affect" her chances of being retained at the end of the probationary period. *Tillotson*, 727 F. App'x at 169. So even when an employer uses an "evaluation process [that] was haphazard" that alone cannot create a "reasonable inference" of discrimination. *Schoonmaker*, 595 F.3d at 270 (internal quotations omitted). And an employer's "unwise business judgments" or "faulty evaluation system" does not establish an inference of discrimination either. *Id.* (internal quotations omitted). All this is to say, Okakpu-Mbah has failed to show that the reason for firing her had no basis in fact.

## B.

Nor has Okakpu-Mbah established that her insufficient work speed did not actually motivate her firing. On this front, Okakpu-Mbah makes several arguments, none of which are convincing. She claims: (1) that similarly situated white employees were treated better, (2) that other African Americans were treated badly, (3) that racism was generally pervasive, and (4) that the Postal Service did not take DeGryse's comments seriously. We address each in turn.

*Comparators.* Okakpu-Mbah points to Winters, Steck, and Perkins—three younger white employees—and claims that although they had negative performance reviews during their probationary period, they were not fired. As a factual matter, Okakpu-Mbah is correct that the three women received negative reviews. But as a legal matter, these three women are not similarly situated because they did not have the same performance issues as Okakpu-Mbah.

8

No. 21-2811, *Okakpu-Mbah v. Postmaster Gen. of United States*

Comparators must be "nearly identical" in "all relevant aspects" of their employment to the plaintiff. *Humenny v. Genex Corp.*, 390 F.3d 901, 906 (6th Cir. 2004) (internal quotations omitted). "Differences in job title, responsibilities, experience, and work record can be used to determine whether two employees are similarly situated." *Leadbetter v. Gilley*, 385 F.3d 683, 691 (6th Cir. 2004). On her 30-day review, Winters received an unacceptable rating for her dependability on work, attendance, and reports. Steck received two unacceptable ratings, one for dependability and one for work methods, like following safety rules. And as for Perkins, she received no unacceptable ratings on her 30-day review; but received an unacceptable rating for her dependability on both her 60-day review and 80-day review. But none of the three women received an unacceptable rating for their work quantity. And "[s]uperficial similarities between a disciplined employee and his colleagues" are not enough to make them comparators. *Arendale v. City of Memphis*, 519 F.3d 587, 604 (6th Cir. 2008); *see also Miles v. S. Cent. Hum. Res. Agency*, 946 F.3d 883, 893 (6th Cir. 2020).

Simply receiving a negative review is not enough to make employees similarly situated; instead, the reviews must concern similar work issues. *Cf. Colvin v. Veterans Admin. Med. Ctr.*, 390 F. App'x 454, 458–59 (6th Cir. 2010) (holding that a plaintiff failed to show that another is similarly situated where they both had issues with speed because the plaintiff had committed additional, serious errors that the other employee had not). Efficiency and dependability are "of a very different nature, and there are legitimate reasons why [an employer] would treat them differently." *Wright v. Murray Guard, Inc.*, 455 F.3d 702, 710 (6th Cir. 2006). And we have held that a plaintiff is not similarly situated to employees where their "work records and evaluations" were not "similar." *Shah v. Gen. Elec. Co.*, 816 F.2d 264, 270 (6th Cir. 1987).

No. 21-2811, *Okakpu-Mbah v. Postmaster Gen. of United States*

Okakpu-Mbah responds that work quantity and dependability are comparable because nothing affects overall production more than absenteeism. But this argument is unconvincing. The relevant inquiry is not overall production, but the timeliness of the production. As Fish testified, the amount of mail that had to be processed made speed "a very, very important part of the job." (R. 42-2, Fish's Dep., PageID 197.) She explained that "it's not a matter of just getting through it, it's a matter of getting the mail sorted . . . accurately by the time that the mail needs to depart." (*Id.*) And there are legitimate reasons to treat the two differently. For example, employers can replace an absent employee to maintain overall production. But nothing makes up for an employee's lack of pace.[8] Because the three women had different performance issues and evaluations, they are not relevant comparators.[9]

---

[8] Even if these performance categories—work quantity and dependability—were similar in all relevant respects, there is another reason why at least Winters and Steck are not comparable to Okakpu-Mbah: They improved, she did not. And we have held that "[d]ifferences in experience and disciplinary history [may] establish that" comparators "are not similarly situated." *Tennial v. United Parcel Serv., Inc.*, 840 F.3d 292, 304 (6th Cir. 2016). Although Perkins had attendance issues at the 80-day evaluation, she missed time then because of a death in the family, so she too is distinguishable from Okakpu-Mbah.

[9] Okakpu-Mbah also argues that she did not receive her 60-day or 80-day performance reviews, so she did not have the benefit of extra feedback. Although the Postal Service responds that she received those reviews, at summary judgment we take the evidence in the light most favorable to Okakpu-Mbah as the nonmoving party. *See Delek US Holdings, Inc.*, 32 F.4th at 497. Still, even if Okakpu-Mbah received only a 30-day review, that does not change the analysis. This is because she was aware of her problematic performance from her 30-day review and no evidence suggests that she improved. Thus, the failure to receive additional reviews does not establish pretext. Further, although Winters, Steck, and Perkins may have received additional reviews and been treated more favorably in this regard, this does not help Okakpu-Mbah overcome the fact that they did not engage "in substantially identical conduct to that which the [Postal Service] contends motivated its discharge of [Okakpu-Mbah]" and, thus, this difference fails to establish pretext. *Jackson v. VHS Detroit Receiving Hosp., Inc.*, 814 F.3d 769, 779–80 (6th Cir. 2016).

No. 21-2811, *Okakpu-Mbah v. Postmaster Gen. of United States*

*Other Acts.* Next, Okakpu-Mbah argues that Fish treated other African Americans "badly too." She claims that Fish terminated five other black employees, only gave access codes to white employees, and preferred white employees "with respect to job duties and breaks."

Okakpu-Mbah, however, did not develop these arguments, so they are forfeited.[10] It is well-established that parties give up "issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation." *McPherson v. Kelsey*, 125 F.3d 989, 995–96 (6th Cir. 1997) (internal quotation omitted). Indeed, "[i]t is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to . . . put flesh on its bones." *Id.* (internal quotation omitted). Okakpu-Mbah does just that. Her brief does not elaborate on any of these arguments. She mentions each contention and baldly asserts that each is probative of discrimination. But absent is any effort to map these arguments onto the pretext analysis. Okakpu-Mbah does not, for example, explain how each piece of evidence is probative of discrimination. Nor does she explain the governing legal standard for this type of "other acts" evidence or try to engage with that standard.[11]

---

[10] The Postal Service argues that these arguments are "waived" but the proper term here is "forfeited." *See United States v. Russell*, 26 F.4th 371, 374 (6th Cir. 2022) (explaining the difference between the two terms).

[11] But even if Okakpu-Mbah had not forfeited these arguments, they would fail to establish pretext. We allow employees to rely on "other acts" evidence to establish pretext under certain circumstances. *Griffin v. Finkbeiner*, 689 F.3d 584, 598–600 (6th Cir. 2012). For example, the plaintiff could show that the evidence is "logically or reasonably tied" to the adverse action against her, that the same "bad actors" were involved, or that the conduct was in close temporal proximity, among other factors. *Schrack v. RNL Carriers, Inc.*, 565 F. App'x 441, 445 (6th Cir. 2014) (citing *Griffin*, 689 F.3d at 599).

Okakpu-Mbah's "other acts" evidence fails to meet this standard. For example, she claims that five other employees were fired, but as it turns out, four of them remain employed and Fish had no role in firing the fifth. And it is unclear how these firings are logically tied to Okakpu-Mbah's firing. She also does not explain how keeping access codes from two specific employees satisfies any of the factors above. And finally, her contention that white employees were treated better are conclusory remarks which cannot show pretext. *See Mitchell*, 964 F.2d at 584–85.

No. 21-2811, *Okakpu-Mbah v. Postmaster Gen. of United States*

*Pervasive Racism.* Okakpu-Mbah next claims that racism was generally pervasive at the workplace. To show this, she marshals several arguments without seriously developing any of them. So these arguments are forfeited just the same. *See McPherson*, 125 F.3d at 995–96.

But even if they were not forfeited, they fail to show pretext. Generally, "discriminatory statements may establish the existence of a discriminatory atmosphere, which, in turn, could contribute to a finding of pretext." *Smith*, 13 F.4th at 518–19 (internal quotations omitted). But "actions by nondecisionmakers cannot alone prove pretext, nor can decisionmakers' statements or actions outside of the decisionmaking process." *Id.* at 519 (alterations omitted) (quoting *EEOC v. Ford Motor Co.*, 782 F.3d 753, 768 (6th Cir. 2015) (en banc)). And "rumors, conclusory allegations and subjective beliefs . . . are wholly insufficient evidence to establish a claim of discrimination as a matter of law." *Mitchell*, 964 F.2d at 584–85.

Okakpu-Mbah relies heavily on Whitten's testimony. Whitten testified that the Postal Service fired Okakpu-Mbah "in part" because of her race. (R. 45-33, Whitten's Dep., PageID 457.) But this is merely a conclusory allegation, which cannot show pretext. *See Mitchell*, 964 F.2d at 584–85. And this statement is puzzling given that Whitten was the one who told Fish that Okakpu-Mbah was "veeeery slow" and testified that she "was slower than most of the people that she was working with." (R. 42-4, Whitten's Email, PageID 203; R. 42-5, Whitten Dep., PageID 210.)

Whitten also claimed that white employees were treated better and their black counterparts experienced racism. But other than Whitten's conclusory statement, Okakpu-Mbah did not present evidence of this, nor did she point to what favorable treatment black employees were not given.

12

No. 21-2811, *Okakpu-Mbah v. Postmaster Gen. of United States*

Such "vague assertion[s] that there was a general attitude of discrimination . . . is insufficient to establish pretext."[12] *Smith v. Leggett Wire Co.*, 220 F.3d 752, 761 (6th Cir. 2000).

Okakpu-Mbah also points to Whitten's experience at Westwood. Whitten testified that she endured racial slurs and gender-based derogatory comments. But none of these comments were made by Fish or tied to her in any way. And there is no evidence that they influenced Fish's decision to terminate Okakpu-Mbah. *See Blizzard v. Marion Tech. Coll.*, 698 F.3d 275, 287 (6th Cir. 2012).

Whitten made two statements specifically about Fish. She said that she heard Fish make a racial slur and that she heard that Fish had said her father was raised by the KKK. But these general allegations are not enough to show pretext. *Smith*, 220 F.3d at 761. Okakpu-Mbah does not state what that racial slur was, when it was said, and whether it was connected to her firing. We have held that racially insensitive statements can be "sufficient evidence of racial animus *only* if they [had] some connection to the decision to terminate" the employee. *Griffin v. Finkbeiner*, 689 F.3d 584, 595 (6th Cir. 2012) (emphasis added). So "[i]solated and ambiguous comments will not support a finding of discrimination." *Id.* (quoting *Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344, 355 (6th Cir. 1998)). As for the KKK comment, putting aside the admissibility issues, there is no evidence that Fish's father was actually part of the KKK or that her decision was influenced by her father's alleged ties.

---

[12] Okakpu-Mbah also points to statements from Daryale Franklin, one of Okakpu-Mbah's co-workers, and suggests that Franklin believed that the Postal Service treated Okakpu-Mbah badly because of her race. But the statements Franklin made were about bullying and an incident on the dock, both of which had nothing to do with the firing of Okakpu-Mbah, nor did Franklin specifically mention race. In any event, this is just a conclusory allegation that cannot show pretext. *See Mitchell*, 964 F.2d at 584.

13

No. 21-2811, *Okakpu-Mbah v. Postmaster Gen. of United States*

Okakpu-Mbah claims that racism was not taken seriously, as no employee was ever disciplined for "making racial slurs or for engaging in racist conduct." (Appellant's Br. at 28.) But Okakpu-Mbah does not clarify what racial slurs and conduct went unpunished. Nor does she explain why that is relevant to her firing or that the Postal Service knew about these remarks and failed to take action. *Cf. Smith*, 220 F.3d at 761 (noting the lack of evidence that an employer "tolerated or condoned" racial harassment).

*DeGryse Incident.* Last, Okakpu-Mbah argues that "defendant's lack of acknowledgment of the seriousness of Ms. DeGryse's conduct of committing racial and age harassment and an assault on [her]" are "strong evidence of race and age discrimination, and retaliation." There is no doubt that DeGryse's racist and ageist comments were repugnant and highly disturbing, but Fish took appropriate steps to address them. She investigated and engaged in corrective action with DeGryse explaining that her behavior would not be tolerated. Nothing suggests that DeGryse's comments were endorsed by Fish or contributed to her decision in anyway. In any event, we have held that actions by nondecisionmakers "cannot alone prove pretext." *Ford Motor Co.*, 782 F.3d at 768. And we held that statements—which were just as jarring as those here—by an employee's coworkers did not establish pretext because "none of the racial comments were made by the persons who terminated" the employee. *Smith*, 220 F.3d at 759 (collecting cases). So they could not show the employer's animus. *Id.* Thus, DeGryse's actions alone cannot prove pretext, disturbing as they are.

## IV.

The Postal Service produced evidence that it fired Okakpu-Mbah because she was slow at work. Okakpu-Mbah believed this was pretext for racism, but she failed to produce sufficient evidence to survive summary judgment. So we **AFFIRM**.

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

No. 21-2811

VICTORIA N. OKAKPU-MBAH, an individual,

    Plaintiff - Appellant,

v.

POSTMASTER GENERAL OF THE UNITED STATES,

    Defendant - Appellee.

**FILED**
Aug 31, 2022
DEBORAH S. HUNT, Clerk

Before:  GIBBONS, WHITE, and NALBANDIAN, Circuit Judges.

# JUDGMENT

On Appeal from the United States District Court
for the Western District of Michigan at Grand Rapids.

THIS CAUSE was heard on the record from the district court and was argued by counsel.

IN CONSIDERATION THEREOF, it is ORDERED that the judgment of the district court is AFFIRMED.

**ENTERED BY ORDER OF THE COURT**

Deborah S. Hunt, Clerk